UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DAVID RANDALL KUNKLEMAN,

    Plaintiff,

v.                                                                        Case No. 3:25cv1872-TKW-HTC

DENA MARIE KUNKLEMAN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff David Randall Kunkleman, proceeding *pro se*, has filed a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1) and a litany of motions (Docs. 3, 6, 8, 10-12) related to the state court proceedings that dissolved his marriage and required him to pay child support. He has also filed a motion to proceed *in forma pauperis*. Doc. 13. After reviewing the complaint, the undersigned finds: (1) it fails to comply with the Federal Rules of Civil Procedure; (2) the requests for declaratory and injunctive relief are barred by *Younger v. Harris*, 401 U.S. 37 (1971); (3) it fails to state a claim for relief under federal law; and (4) it sues state agencies who are immune from suit under the Eleventh Amendment. Thus, this case should be DISMISSED without prejudice and the pending motions should be terminated as MOOT.

## I.    Background

Kunkleman sues the following Defendants: (1) his ex-wife, Dena Marie Kunkleman ("Ms. Kunkleman"); (2) Ms. Kunkleman's attorney, Angela Guttmann; (3) the Guttmann Law Firm; (4) Ms. Kunkleman's parents, Joe and Susan Badeaux; (5) the Florida Department of Revenue ("FDOR"); (6) the Santa Rosa County Clerk of Court & Comptroller, Jason English; (7) the Florida Department of Children and Families ("DCF"); (8) DCF Investigator Paris; and (9) ten John/Jane Does.

In October 2023, Ms. Kunkleman filed a petition for dissolution of marriage. *See* Santa Rosa County Case No. 2023 DR 1716.  The state court entered a final judgment of dissolution on July 2, 2025.  Kunkleman's complaint in this case sets forth the following allegations regarding the state court proceedings, many of which are vague and disjointed:

- In 2024, Kunkleman paid $19,838 in direct support "which was ignored, creating phantom arrears."
- Guttman threatened Kunkleman with contempt and jail on February 6, 2025, "despite unrebutted affidavit of impossibility."
- A "parallel IV-D action" was opened in June 2025 despite the ongoing proceedings in state court, which Kunkleman claims constitutes "double enforcement."
- During an unspecified proceeding in state court, a bailiff muted Kunkleman's microphone and threatened him.
- The July 2025 final judgment "imposed contradictory child-support figures ($6,550.40 vs. $5,030.40 worksheets)."
- Kunkleman filed "affidavits of financial impossibility" on July 11 and September 15 of 2025 showing he had a net income of $1,818 per month; these affidavits were "unrebutted but ignored."

- In July and August of 2025, the FDOR issued a certification for passport denial, a delinquency notice, and a notice of driver's license suspension, "all on false arrears."

- On September 12, 2025, Ms. Kunkleman submitted a proposed order seeking to impose a $15,000 contempt purge despite Kunkleman's "affidavit of financial impossibility" and "without lawful findings of ability to pay." The proposed order "exemplifies the pattern of attempting to enforce phantom arrears through coercive sanctions."

- In an October 2, 2025 affidavit, a paralegal who worked at the law firm that previously represented Kunkleman indicated the firm submitted a financial affidavit to the court which mistakenly listed Kunkleman's gross sales rather than net income.

- At some unspecified time, a DCF Investigator named "Paris" refused to provide his "name/ID/email," mocked Kunkleman by asking "English or Spanish," and demanded an in-home visit.

- "Federal preservation notices and transparency filings were docketed and ignored."

- Kunkleman's Social Security number "was submitted in duplicative IV-D certifications tied to false arrears."

- Kunkleman's obligations "were securitized or reimbursed through Treasury flows, concealed by refusal to produce ledgers and FOIA records."

- A "Global Damages Rider preserved over 100 frauds … suppressed in state court, and establishes self-executing damages of $17,451,747.17 escalating to $174,510,747.17 with treble damages and $1,000/day sanctions." The Rider "further preserves a two-year role-reversal remedy: obligations wrongfully enforced against [Kunkleman] must be reversed in kind for the same period, requiring [Ms. Kunkleman] to bear the burdens fraudulently imposed."

Based on the foregoing, Kunkleman brings eight claims, which will be described below. As relief, he seeks a temporary restraining order and preliminary injunction "halting all enforcement and contempt actions pending audit"; a "declaratory judgment voiding phantom arrears enforcement as unconstitutional"; a

rescission of driver's license and passport sanctions; an order compelling production of certain documents; monetary damages; the return of silver purportedly possessed by Ms. Kunkleman's parents; and an order requiring "a two-year role reversal" whereby Ms. Kunkleman assumes the responsibilities imposed on him by the final judgment. Doc. 1 at 4-5.

## II.    Discussion

For the reasons discussed below, this action should be sua sponte dismissed without prejudice. First, Kunkleman's complaint fails to comply with the Federal Rules of Civil Procedure. Second, his claims for declaratory and injunctive relief are barred by *Younger* because they would interfere with the ongoing state court proceedings. Third, he has failed to state a claim for relief under federal law. And finally, he sues state agencies immune from suit.

### A.    Kunkleman's complaint fails to comply with the Federal Rules of Civil Procedure.

Kunkleman's complaint does not comply with the Federal Rules of Civil Procedure because it is an impermissible shotgun pleading. The complaint is a shotgun pleading because it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Only two Counts in the complaint specify which Defendants the claim is being brought

against—the First Amendment claim against DCF Investigator Paris and the conversion claim against the Badeauxes. Doc. 1 at 3-4. The other six Counts provide no indication as to which Defendant or Defendants the Counts implicate. And the complaint suggests Defendant English, the Santa Rosa County Clerk, is being sued "for prospective injunctive relief regarding docketing and records practices" (Doc. 1 at 2), but there are no allegations in the complaint regarding English or those practices.

Shotgun pleadings violate the Federal Rules of Civil Procedure because "they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. Because Kunkleman's complaint is a shotgun pleading, it is subject to dismissal.[1] *See Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) ("A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds.") (citation omitted).

---

[1] Kunkleman's complaint also fails to comply with Fed. R. Civ. P. 20 because it attempts to bring unrelated claims against different Defendants in the same case. *See* Fed. R. Civ. P. 20(a)(2) (stating multiple defendants may be joined in one action if: (1) any right to relief asserted against them arises out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action). For example, the claim that DCF Investigator Paris violated the First Amendment by mocking Kunkleman and demanding an in-home visit does not share common questions of law or fact with Kunkleman's other claims.

**B.      Kunkleman's requests for declaratory and injunctive relief are subject to dismissal under *Younger*.**

Through this action, Kunkleman primarily seeks a different forum to contest the decisions rendered by the state court related to his child support obligations, as well the actions to enforce those obligations. *See* Doc. 1 at 4-5 (seeking to halt "all enforcement and contempt actions pending audit," to void "phantom arrears enforcement as unconstitutional," to rescind driver's license and passport sanctions, and to reverse the obligations imposed on him and his ex-wife by the judgment). However, because the state court proceedings are ongoing, this Court cannot issue declaratory or injunctive relief that interferes with those proceedings.

"The *Younger* doctrine bars federal court intervention in state noncriminal proceedings where the proceedings constitute an ongoing state judicial proceeding, the proceedings implicate important state interests, and there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Adams v. State of Florida*, 185 F. App'x 816, 816-17 (11th Cir. 2006) (citing *31 Foster Children v. Bush*, 329 F.3d 1255, 1274 (11th Cir. 2003)).  This case meets all the factors for *Younger* abstention.

First, the state court proceedings are ongoing.  Although the circuit court entered final judgment on July 2, 2025, Kunkleman has appealed the judgment and

the appeal remains pending.[2]    *See* First DCA Case No. 1D2025-1799; *Redner v. Citrus Cnty., Fla.*, 919 F.2d 646, 649 (11th Cir. 1990) ("A state's trial and appeals process is considered 'a unitary system,' and *Younger* prevents a federal court from disrupting the process while a case is on appeal.") (citation omitted).  Furthermore, the relief requested in this action would clearly interfere with the state court proceedings, as Kunkleman is attempting to use this case to invalidate the state court's decisions regarding child support and prevent enforcement of those decisions.  *See 31 Foster Children*, 329 F.3d at 1276 (noting the first factor in *Younger* abstention analysis considers whether the federal proceeding will interfere with an ongoing state court proceeding, which involves looking "to the relief requested and the effect it would have on the state proceedings").

Second, proceedings related to child support implicate important state interests.  *See Adams*, 185 F. App'x at 817 ("The ability to collect child support payments is an important state interest."); *see also Davis v. Self*, 547 F. App'x 927, 930 (11th Cir. 2013) ("There is no doubt that matters involving domestic relations and child custody implicate important state interests.").  Lastly, Kunkleman has not shown he cannot present his federal claims related to the sufficiency of the evidence

---

[2] Because the appeal is still pending, the *Rooker-Feldman* doctrine does not deprive the Court of jurisdiction over this case.  *See Nicholson v. Shafe*, 558 F.3d 1266, 1279 (11th Cir. 2009) ("state proceedings have not ended for purposes of *Rooker-Feldman* when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment").

supporting the child support determinations to either the circuit court or on appeal. *See 31 Foster Children*, 329 F.3d at 1279 (noting "plaintiffs have the burden of establishing that the state proceedings do not provide an adequate remedy for their federal claims" and "[a] federal court 'should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary'") (citations omitted); *see also Leonard v. Ala. State Bd. of Pharmacy*, 61 F.4th 902, 909 (11th Cir. 2023) ("To demonstrate that claims are procedurally prevented in state tribunals, plaintiffs should provide evidence of state laws, rules, or procedures that would allow a district court to evaluate whether the plaintiff's federal claims will effectively be shut out from the judicial system and cut off from effective review in the courts.").

Based on the foregoing, because the state court proceedings are ongoing, Kunkleman's claims for declaratory and injunctive relief are subject to dismissal under *Younger*. *See Adams*, 185 F. App'x at 817 (affirming dismissal under *Younger* of § 1983 complaint that sought to enjoin "a civil contempt finding accompanied by a threat of jail" related to child support).

### C. Kunkleman has failed to state a claim for relief under federal law.

By moving to proceed *in forma pauperis*, Kunkleman has invoked the screening provisions of 28 U.S.C. § 1915(e)(2)(B). *See Whitted v. Sarasota Mem'l Hosp.*, 2024 WL 4392784, at *1 n.1 (M.D. Fla. Oct. 3, 2024) (construing a *pro se*

litigant's "failure to pay the filing fee as a request to proceed *in forma pauperis*" when screening and dismissing his complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)). Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss his complaint, or any portion thereof, if it determines the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To state a claim, Kunkleman must plead factual content which allows the Court to draw the reasonable inference the Defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must liberally construe *pro se* allegations, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), but conclusory allegations and legal conclusions couched as factual allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681; *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Here, the factual allegations in Kunkleman's complaint fail to state a claim under federal law.

      1.    <u>Count 1</u>

Count 1, titled "§ 1983 Procedural Due Process," claims: (1) "enforcement proceeded on false ledgers and contradictory income figures without ability-to-pay findings"; and (2) "unrebutted affidavits [were] ignored" and "admitted facts denied effect." Doc. 1 at 3. As an initial matter, and as discussed above, the complaint does not identify which Defendant is responsible for the alleged due process violation.

To the extent this claim is brought against Ms. Kunkleman or her attorney, they are not state actors and cannot be sued under § 1983. *See Jefferies v. Ga. Residential Fin. Auth.*, 678 F.2d 919, 922 (11th Cir. 1982) ("It is well settled that the fourteenth amendment proscription against deprivations of property without due process of law reaches only government action and does not inhibit the conduct of purely private persons in their ordinary activities.") (citation omitted); *see also Cobb v. Ga. Power Co.*, 757 F.2d 1248, 1251 (11th Cir. 1985) ("[O]ne who has obtained a state court order or judgment is not engaged in state action merely because it used the state court legal process."). And to the extent the claim complains about the actions of the state court judge, they are not named as a Defendant and would, in any event, be immune from suit. *See Higdon v. Tusan*, 746 F. App'x 805, 810 (11th Cir. 2018) ("A judge is entitled to absolute judicial immunity from damages for actions taken while acting in [their] judicial capacity, unless [they] acted in the 'clear absence of all jurisdiction.'") (citation omitted); *id.* ("This immunity applies even when the judge's acts are in error, malicious, or in excess of [their] jurisdiction[.]").

Furthermore, "[a] procedural due process violation is only cognizable under § 1983 'when the state refuses to provide a process sufficient to remedy the procedural deprivation.'" *Collier v. Conway*, 672 F. App'x 950, 952 (11th Cir. 2016) (citation omitted). Florida provides a remedy for Kunkleman to challenge the rulings he perceives were unfair in the circuit court—he can file an appeal with the

First DCA, which he has done.  Thus, he has failed to state a procedural due process claim.

> 2.    <u>Count 2</u>

In Count 2, Kunkleman alleges two individuals retaliated against him in violation of the First Amendment when: (1) a bailiff muted his microphone and made unspecified threats; and (2) DCF Investigator Paris mocked him by asking "English or Spanish?" and intimidated him by demanding an in-home visit.  Doc. 1 at 3-4. First, the bailiff is not a Defendant, so the vague allegations regarding him are irrelevant.  Second, Kunkleman has failed to state a retaliation claim because: (1) the conduct described is not likely to deter a person of ordinary firmness from the exercise of his First Amendment rights; and (2) the allegations do not establish a causal connection between any protected speech and the bailiff or Paris's actions. *See Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) ("To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions."); *see also id.* at 481 ("[A] defendant adversely affects protected speech if his alleged retaliatory conduct 'would likely deter a person of ordinary firmness from the exercise of First Amendment rights.'") (citation omitted).

3.    Counts 3 & 4

Count 3, asserting a violation of 42 U.S.C. § 1985, fails to state a claim because the allegation that private actors and state officials "conspired to deprive [Kunkleman] of rights by enforcing phantom arrears and concealing assets" is entirely conclusory. The complaint is devoid of allegations supporting the existence of a conspiracy to violate Kunkleman's rights; indeed, the complaint fails to even specify who allegedly participated in the conspiracy. *See Guillaume v. United States*, 2025 WL 2610053, at *3 (11th Cir. Sept. 10, 2025) (holding plaintiff failed to state a § 1985 claim because his allegations consisted of "conclusory statements that assume the defendants had conspired with each other without providing facts that plausibly state such a claim"); *Coker v. Warren*, 2025 WL 1575578, at *7 (11th Cir. June 4, 2025) (affirming dismissal of § 1985 claim when "complaint presented vague and general allegations of misconduct by many different actors, and there were no facts alleged that tied each individual defendant's alleged misconduct to any overarching conspiracy").

Furthermore, a § 1985 claim also requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), but the complaint does not suggest any of the Defendants' actions were motivated by Kunkleman's membership in an identifiable group. *See Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) ("That

animus standard requires that the defendant proceeded on his course of conduct 'because of, not merely in spite of, its adverse effects upon an identifiable group.'") (citation omitted); *see also Coker*, 2025 WL 1575578, at *7 (affirming dismissal of § 1985 claim when complaint "did not explain what the motivation for the defendants' alleged conspiracy was, and the defendants were not alleged to have been engaged in the conspiracy because of any class-based animus rather than personal animus against [plaintiff] as an individual"); *White v. Berger*, 709 F. App'x 532, 538 (11th Cir. 2017) (Section 1985 "protects individuals from conspiracies to harm them motivated by their membership in classes having common characteristics of an inherent nature—i.e., those kinds of classes offered special protection under the equal protection clause.") (quotation marks and citation omitted).    Thus, Kunkleman has failed to state a claim under § 1985.

Count 4, asserting a violation of 42 U.S.C. § 1986, also fails to state a claim because a § 1986 claim is dependent on the existence of a viable § 1985 claim.  *See Guillaume*, 2025 WL 2610053, at *3 ("Section 1986 is a derivative claim under § 1985 and, where there is no underlying conspiracy to support a § 1985 claim, the derivative § 1986 claim must also fail.") (citation omitted).

4.    Count 5

Count 5 alleges a violation of the Supremacy Clause and Title IV-D of the Social Security Act.  Doc. 1 at 4.  In support, Kunkleman asserts: "Duplicative IV-

D actions and refusal to produce remittance logs violate federal supremacy; enforcement must halt until transparent audit produced." *Id.* However, Kunkleman does not specify what provision of Title IV-D was allegedly violated or who allegedly violated it. Moreover, neither the Supremacy Clause nor Title IV-D create a cause of action. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (stating the Supremacy Clause "creates a rule of decision" requiring courts not to "give effect to state laws that conflict with federal laws" but noting the Clause "is not the 'source of any federal rights' and certainly does not create a cause of action") (citations omitted); *Sheetz v. Norwood*, 608 F. App'x 401, 405 (7th Cir. 2015) ("no court of appeals has ever concluded that a provision of [Title IV-D] creates a private right of action"); *Quinn v. N.C. Dep't of Health & Hum. Servs.*, 2020 WL 4468728, at *2 (W.D.N.C. Aug. 4, 2020) ("Because Title IV-D does not create a private right of action, Plaintiff cannot raise a Title IV-D claim in this case."). Thus, Kunkleman has failed to state a claim in Count 5.

     5.    <u>Count 6</u>

Count 6 alleges a RICO claim. To state a civil RICO claim, a plaintiff "must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

Kunkleman's conclusory allegations do not come close to establishing these six elements.

First, Kunkleman does not allege who participated in the RICO enterprise, what the relationships were among the participants, or how the participants shared a purpose. *See id.* (establishing an association-in-fact enterprise requires showing "a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose") (cleaned up).

Second, Kunkleman's allegations come nowhere near establishing a pattern of racketeering activity. With respect to predicate acts, Kunkleman states only "mail/wire fraud, extortion … , securities/CUSIP fraud, [and] Title IV-D incentive misuse." But Kunkleman's references to fraud are devoid of any detail. *See id.* at 1215-16 (explaining plaintiffs "must put forward enough facts with respect to each predicate act to make it independently indictable as a crime" and plaintiffs alleging mail and wire fraud are "required to plead '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiff; and (4) what the defendants gained by the alleged fraud'") (citation omitted).

Furthermore, while Kunkleman mentions his ex-wife's attorney sent him a letter in February 2025 threatening contempt and jail, a warning that there could be

consequences for failing to pay child support does not amount to extortion. And

courts have held litigation-related activities like those alleged by Kunkleman cannot

constitute the predicate acts needed to sustain a RICO claim. *See Raney v. Allstate*

*Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) ("neither the threat to litigate nor the

fabrication of evidence behind the lawsuit made the action 'wrongful' within the

meaning of 18 U.S.C. § 1951 and therefore could not be a predicate act under

RICO"). Accordingly, Kunkleman has not stated a RICO claim.

      6.    Count 8[3]

In Count 8, Kunkleman alleges a violation of the Privacy Act, asserting Social

Security number "certifications [were] transmitted falsely to federal databases" and

"improper federal reimbursements" were claimed. Doc. 1 at 4. However,

Kunkleman has failed to state a Privacy Act claim because that statute only applies

to federal agencies and there are no allegations that a federal agency mishandled

Kunkleman's data and no federal agency is a Defendant.[4] *See Schwier v. Cox*, 340

---

[3] In Count 7, Kunkleman seeks to assert a state law claim for "conversion/unjust enrichment" related to the disposition of silver Kunkleman claims was a marital asset. However, in the absence of a viable federal law claim, the Court should not exercise supplemental jurisdiction over the state law claim and it should also be dismissed. *See Raney*, 370 F.3d at 1089 (encouraging "district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial") (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)).

[4] Count 8 also references the Tucker Act, but the Tucker Act is a jurisdictional statute that does not create substantive rights. *See Fulton v. Fulton County Bd. of Comm'rs*, 148 F.4th 1224, 1263 (11th Cir. 2025). Moreover, the Tucker Act permits claims against *the United States*; Kunkleman's complaint does not name the United States as a Defendant and nothing in it suggests he would be entitled to relief from the federal government.

F.3d 1284, 1287 (11th Cir. 2003) (noting the private right of action created by the Privacy Act only applies to federal agencies).

**D.    The FDOR and DCF are immune from suit.**

Kunkleman sues the FDOR and DCF.  However, the Eleventh Amendment prevents state agencies from being sued in federal court unless: (1) Congress overrides the state's sovereign immunity; or (2) the state consents to suit or waives its immunity.  *Brown v. Fla. Dep't of Revenue Off. of Child Support Enf't*, 697 F. App'x 692, 692 (11th Cir. 2017).  "Congress has not abrogated Eleventh Amendment immunity in § 1983 cases, and the State of Florida has not waived sovereign immunity or consented to suit with respect to such actions."  *Driessen v. Univ. of Miami Sch. of Law Children & Youth Clinic*, 835 F. App'x 489, 492 (11th Cir. 2020). Thus, the FDOR and DCF are immune from suit in federal court under the Eleventh Amendment, regardless of the relief sought.  *See Carter v. Dep't of Children & Families*, 2022 WL 2921310, at *3 (11th Cir. July 26, 2022) (holding state agencies like DCF are immune from suit); *Brown*, 697 F. App'x at 693 (holding FDOR is immune from suit under the Eleventh Amendment); *see also Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989) ("This Eleventh Amendment bar applies regardless of whether the plaintiff seeks money damages or prospective injunctive relief.").

## III.    Conclusion

As described above, Kunkleman's complaint: (1) fails to comply with the Federal Rules of Civil Procedure; (2) seeks declaratory and injunctive relief that is barred by *Younger*; (3) fails to state a claim under federal law; and (4) sues state agencies which are immune from suit under the Eleventh Amendment.  Thus, this case should be dismissed without prejudice.

Accordingly, it is RECOMMENDED:

1    That this case be DISMISSED without prejudice.

2.    That all pending motions (Docs. 3, 6, 8, 10-13) be TERMINATED as moot.

3.    That the clerk close the file.

At Pensacola, Florida, this 15th day of October, 2025.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days of the date of this Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties.    A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1.